IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LUIS A. ACEVEDO GARCIA, et al., | |
| Plaintiffs | |
| vs. | CIVIL NO. 97-2639 (JP) |
| HON. ROBERTO VERA MONROIG, et al., | |
| Defendants | |

**OPINION AND ORDER**

I.  **INTRODUCTION**

The Court has before it Defendants' "Motion to Restate Our Objection to Severance of Actions" (**docket No. 185**), which was filed on Friday, October 12, 2001 less than one-hour before the start of the day's jury trial in this case. The Court took notice of the motion at the start of trial and read for the record the Court's October 12, 2001 Order which re-affirmed its decision to sever the trial pursuant to its October 11, 2001 Order (docket No. 184) and stated that a more formal order would follow. Hereinafter is a more formal and in-depth Opinion and Order on this matter.

II.  **PROCEDURAL BACKGROUND**

Plaintiffs, some 80 past and 2 current employees of the Municipality of Adjuntas, who are members of the New Progressive Party in Puerto Rico ("NPP") filed this action on November 12, 1997 alleging that Defendants the Honorable Roberto Vera Monroig - Mayor of Adjuntas ("Vera"), Irma M. González Delgado - Personnel Director

CIVIL NO. 97-2639(JP)                    2

of the Municipality of Adjuntas, and the Municipality of Adjuntas discriminated against them because of their political affiliation with the NPP after Mayor Vera, a member of the Popular Democratic Party ("PDP"), was elected in November of 1996 and assumed office on January 14, 1997. Plaintiffs fall into two general groups (1) Thirty-three Plaintiffs who allege that the Defendants harassed them and unjustly discharged them from their positions with the Municipality on account of their political affiliation, and (2) Forty-nine Plaintiffs who only allege that they were discharged from their employment with the Municipality of Adjuntas on account of their political affiliation. Plaintiffs allege that Mayor Vega employed members of the PDP in substitution of the dismissed Plaintiffs. Plaintiffs' claims are based on the First, Fifth, and Fourteenth Amendments of the United States Constitution, 42 U.S.C. Section 1983 and Puerto Rico law.

Defendants deny that they politically harassed Plaintiffs and that they dismissed Plaintiffs as a result of political discrimination. Defendants' theory is that Plaintiffs were dismissed as a result of a legitimate "Layoff Plan" implemented to confront the Municipality's financial crisis found by the new administration. The Municipality alleges that they followed all applicable laws and regulations in the implementation of the lay-off plan and that it was based exclusively on seniority, in an objective and non-discriminatory manner. The lay-off plan affected 102 employees. Of those, 82 are Plaintiffs in this case, who are members of the NPP. Defendants also allege that no political harassment ever took place and that any alleged transfer, demotion, or other adverse working conditions were due to the overstaffing conditions in many

CIVIL NO. 97-2639(JP)                3

departments and the illegal use of the municipal human resources. They contend that they have not infringed any legal provisions.

Pursuant to the undersigned judge's case management system,[1] an Initial Scheduling Conference ("ISC") was held on March 13, 1998. At the ISC, the Court set 1) the deadlines for discovery, 2) the dates for the filing of dispositive motions, and 3) the dates for Pre-Trial and Trial. On November 23, 1998, the Court issued an extensive Opinion and Order on Defendants' Motion for Summary Judgment claiming absolute and qualified immunity, a lack of sufficient evidence to hold the Municipal Defendant liable, and that Plaintiffs failed to provide sufficient evidence of discrimination based on political affiliation. This Court denied Defendant's summary judgment motion, and Defendants appealed. Thereafter, on February 17, 2000, the First Circuit affirmed the Court's denial of summary judgment and dismissed the appeal. See Acevedo-Garcia v. Vera Monroig, 204 F.3d 1 (1st Cir. 2000). On November 20, 2000, the undersigned held a further scheduling conference with the parties. At said conference, the Court set additional dates for depositions and reset the dates for Pre-Trial and Trial.

---

[1] The federal docket is replete with costly, complex and time consuming litigation. Therefore, the Undersigned is a firm believer in the necessity to take an active role in ensuring that cases that come before him are litigated in an efficient and just manner. See Judicial Economy and Efficiency Through the Initial Scheduling Conference: The Method, 35 Cath. U. L. Rev. 943 (1986) authored by the undersigned Judge; see also The Civil Justice Reform Act, Codified at 28 U.S.C.A. §§ 471-482 (West 1993), and the Civil Justice Reform Act's Recommendation by the Civil Justice Reform Acts' Committee which the undersigned chaired and the various orders of the Court entered pursuant thereto. The importance of this Court's ISC and its resulting Order in general is to streamline and simplify this litigation, and reduce the cost and delay that so frequently characterizes it.

CIVIL NO. 97-2639(JP)                    4

On June 25, 2001, the Court met with the parties for a Pre-Trial Conference.  During the conference, the Court determined, and the parties agreed, that the jury trial originally scheduled for July 9, 2001 should be postponed.  In order to better understand the issues in this case, and better evaluate the claims of the 82 Plaintiffs, the Court suggested, and the attorneys for the Plaintiffs and Defendants agreed that the Court sever the Pretrial Conference, and instead hold four separate further Pre-trial conferences wherein the causes of action of twenty (20) Plaintiffs per conference would be discussed.  In order to flush-out the issues related to these Plaintiffs, and in order to avoid any confusion between the Court and the parties as to the claims of these Plaintiffs, the Court ordered that the parties file four (4) separate sets of informative motions i) detailing their theory of the case, ii) identifying the witnesses that they would use for each Plaintiff, and iii) identifying the documentary evidence that they would use for each Plaintiff.

On the October 10, 2001, the day before trial, the Court met with the parties to further discuss the logistics of presenting this case with its 82 Plaintiffs to a jury.  The main concern for the Court was jury confusion in their understanding of the case and each claim, and case management in order to achieve a fair and impartial trial for all litigants.  Given the fact that 82 Plaintiffs were scheduled to testify over at least a three-month period, the Court believed that no one jury would able to deal with evidence pertaining to 82 Plaintiffs in such a manner as to render a fair and impartial verdict at the end of trial.  To be sure, this daunting number posed a problem for the Court and the parties during the pre-trial conference stage of case management.  Four separate pre-trial

CIVIL NO. 97-2639(JP)                5

conferences were needed in order for the Court and the parties to adequately review each Plaintiff's cause of action.

In order to alleviate the logistical problem of trying this case, the Court provided the parties with the following suggestion during the October 10th meeting:

One jury trial would be held. Plaintiffs' attorney would select around 10 Plaintiffs and Defendants' attorneys would select around 10 Plaintiffs for a total of around 20 Plaintiffs. The trial would proceed as usual, and the jury would return a verdict on liability and damages at the end of trial. If the jury returned a verdict for Defendants as to liability, it would apply to all 82 plaintiffs - - - and the entire case against Defendants would be dismissed. However, if the jury returned a verdict for Plaintiffs as to liability, the case would then proceed on the issue of damages as to the remaining Plaintiffs. The parties were assured that each would have the opportunity to present all necessary evidence.

Attorneys for Plaintiffs agreed to this suggestion. However, Attorneys for Defendants disagreed, and cited strategic reasons for wanting to have one long trial in which the claims of all 82 Plaintiffs would be heard. Defendants argued their point despite the fact that a jury verdict finding no liability at the end of the 20 Plaintiffs trial would be considered by this Court and the parties as a finding of no liability as applied to all 82 Plaintiffs, thereby dismissing this action. In the end, as Defendants did not agree to the Court's suggestion, the same was rejected.

**III. THE COURT'S DECISION TO SEVER THIS JURY TRIAL**

On October 11, 2001, the Court held a meeting with the parties and informed them that it was **severing** this 82 Plaintiff jury trial

into four (4) separate trials consisting of 20 Plaintiffs each (the last trial consisting of 22), which will be heard by four separate jury panels. At the meeting, the Court explained that severance was necessary because of the complexity of this litigation and the numerousness of the Plaintiffs. The undersigned's experience as a trial lawyer for 33 years and a federal judge for 20 years has led him to be of the opinion that the problems related to case management in this case, and the likelihood of jury confusion when subjecting one jury to the causes of action of 82 Plaintiffs, over a three-month period of time, are akin to the problems faced by fellow judges who oversee issues related to mass tort litigation. Therefore, in order to resolve these problems, the Court deems it necessary to borrow certain case management techniques from judges who have tackled issues related to mass tort actions. See MANUAL FOR COMPLEX LITIGATION (Third) § 33.28 (1995) ("In mass tort cases involving large numbers of plaintiffs, a single trial of all issues before a single jury may be impractical, at least in the absence of special procedures. Courts have, however experimented with various approaches to structuring trials to achieve greater efficiency and expedition in the resolution of mass tort cases. The approaches include; [among others] a series of traditional trials, each with an individual plaintiff against an individual defendant on all issues, tried with the expectation that a few verdicts will establish parameters for the settlement or trial of all remaining cases.")

"Rule 46(b) provides the district Court with discretion to subdivide a case in **whatever manner seems dictated by the circumstances**" (emphasis ours). 9 CHARLES ALAN WRIGHT, ARTHUR R.

CIVIL NO. 97-2639(JP)                7

MILLER, FEDERAL PRACTICE AND PROCEDURE §§ 2389 (2d ed. 1995). In the interest of justice, the Court, pursuant to Rule 42(b) severed this jury trial into four separate trials to be heard by four separate jury panels.

In the instant motion, Defendants contend that severance of actions is covered by Rule 21 of the Federal Rules of Civil Procedure, and not by Rule 42(b). This distinction is of little consequence because both rules provide the Court with wide discretion to order severance. Rule 21 states, in pertinent part, that "[a]ny claim against a party may be severed and proceeded with separately." Rule 42(b) states, in pertinent part, that "[t]he Court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim . . . ." The Court's determination as to whether it should sever the claims of Plaintiffs under Rule 21 or whether it should order separate trials under Rule 42 requires the same considerations, and are within the broad discretion of the District Court. Morris v. Northrop Grumman Corp., 37 F. Supp.2d 556, 580 (E.D.N.Y. 1999), citations omitted.

In reaching its decision to sever this action, this Court considered (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present common questions of law and facts; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if the

CIVIL NO. 97-2639(JP)                           8

trials were severed and heard by separate juries; and (5) whether different witnesses and documentary proof are required for the separate claims. The Court has determined that considerations (3), (4), and (5) weigh heavily in favor of severance. The Court must again emphasize that it believes that one jury will never be able to absorb evidence, testimony or documentary proof pertaining to 82 Plaintiffs in such a manner as to render a fair and impartial verdict at the end of trial.

The consideration alleged by Defendants as to the fact that they would have to present evidence at four different occasions is of secondary importance. "A paramount consideration at all times in the administration of justice is a fair and impartial trial to all litigants. Considerations of economy of time, money and convenience of witnesses must yield thereto." In re Bendectin Litigation, 857 F.2d at 290, 308 (6th Cir. 1988) (citing Baker v. Waterman S.S. Corp., 11 F.R.D. 440, 441 (S.D.N.Y. 1951)); See also In Re San Juan Dupont Plaza Hotel Fire Litigation, Pretrial Order No. 133, Docket No. 7403, December 21, 2001. Any concerns of potential juror bias resulting from the publication of the first verdict(s) in this case can be alleviated by intensive voir dire. Further, conducting separate trials wherein the jury verdict from each trial is final and appealable as to each set of Plaintiffs facilitates judicial economy and possible settlement in this case by providing the parties with

CIVIL NO. 97-2639(JP)                  9

some scale or model upon which to re-assess whether further litigation would be prudent or advantageous to their cause. Finally, having fewer Plaintiffs testify in each trial would provide the jury with the ability to understand and remember the evidence and witness testimony, and thereby enable them to better appreciate the weight thereof when rendering their verdict. In addition, the jurors who are not lawyers and many of which are for the first time in a courtroom, cannot remember all the facts and all the Plaintiffs.

## IV. CONCLUSION

The U. S. District Court, which is the first line of fire in our judicial system, has the necessary experience to take the initiative to manage its docket in an effective and reasonable way. The Judges of the United States District Courts have discretion in applying their many years of experience. The Court finds that, in the interest of justice, the circumstances surrounding this case require severance of this action. For this reason, and the reasons articulated above, the Court hereby **RE-AFFIRMS** its October 12, 2001 Order and **DENIES** Defendants' instant motion.

The Court however **PROPOSES** the following additional suggestion. In order to safeguard Defendants' concerns regarding multiple trials before different jurors, the Court would be agreeable to the following proposition, which is based on the severance of sections of 20, 20, 20, and 22 Plaintiffs each:

CIVIL NO. 97-2639(JP)                    10

If the jury of the first 20 Plaintiffs renders a verdict of no liability for political discrimination and loss of earnings due to dismissal, the causes of action for all remaining 62 Plaintiffs as to dismissal and loss of earnings for political discrimination will be dismissed.  If there is a verdict for the Plaintiffs by the first jury for political discrimination and loss of earnings, the same jury will continue pertaining to the remaining 62 Plaintiffs divided in sections of 20, 20, and 22 Plaintiffs.  Otherwise, the trial will continue with the same jury panel to determine the harassment issue for the remaining 25 Plaintiffs with harassment claims regardless of the outcome of the verdict pertaining to harassment for the first 8 Plaintiffs, due to the fact that there are varying degrees of harassment, and therefore, each Plaintiff must prove his or her case by clear and convincing evidence.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 15th day of October, 2001.

_____
JAIME PIERAS, JR.
SENIOR U.S. DISTRICT JUDGE