# United States Court of Appeals
## For the First Circuit

Nos. 03-2103
     03-2292

LUIS A. ACEVEDO-GARCIA ET AL.,

Plaintiffs, Appellees,

v.

ROBERTO VERA-MONROIG, Individually and as Mayor of Adjuntas;
MUNICIPALITY OF ADJUNTAS; IRMA M. GONZALEZ-DELGADO, Individually
and as Personnel Director of Adjuntas,

Defendants, Appellants.

———————————————

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., Senior U.S. District Judge]

———————————————

Before

Selya, Circuit Judge;
Coffin, Senior Circuit Judge;
and Lynch, Circuit Judge.

———————————————

    Jorge Martinez Luciano, with whom Johanna Emmanuelli and Law
Offices of Pedro Ortiz Álvaraz, P.S.C. were on brief, for the
Municipality of Adjuntas and the individual appellants in their
official capacities.

    Luis Villares Sarmiento, with whom Sanchez-Betances & Sifre,
P.S.C. was on brief, for the individual appellants in their
personal capacities.

    Gael Mahony, with whom Pamela O'Brien, Holland & Knight LLP
and Israel Roldan-Gonzalez were on brief, for appellees.

———————————————

May 19, 2004

———————————————

LYNCH, Circuit Judge.  In these appeals, we address the willful and longstanding efforts of a Puerto Rico municipality, its mayor, and its personnel director to obstruct and delay the payment of a $6.9 million jury award in a civil rights case.  This is the fourth time this case has come before this court.[1]

In November 2001, a jury awarded verdicts totaling $6,956,400 against the Municipality of Adjuntas in Puerto Rico (the Town), its mayor, Roberto Vera-Monroig (Vera), and its personnel director, Irma Gonzalez-Delgado (Gonzalez).  The jury found that the defendants had engaged in political discrimination in violation of the First Amendment when, after Vera won the 1996 mayoral election, they systematically laid off municipal employees who were members of the opposing political party.  Cf. Branti v. Finkel, 445 U.S. 507, 517 (1980) (dismissal of a public employee based solely on political allegiance violates the First Amendment).  The verdicts won by the twenty plaintiffs in this case -- a subset of the 82 employees who sued the defendants after being terminated from career positions with the Town -- included punitive damages awards of $300,000 against each of the two individual defendants in their personal capacities.  This court upheld the verdicts in December 2003.  Acevedo-Garcia v. Vera-Monroig (Acevedo-Garcia

_____

[1] See Acevedo-Garcia v. Vera-Monroig (Acevedo-Garcia III), 351 F.3d 547 (1st Cir. 2003); Acevedo-Garcia v. Vera-Monroig (Acevedo-Garcia II), 296 F.3d 13 (1st Cir. 2002) (per curiam); Acevedo-Garcia v. Vera-Monroig (Acevedo-Garcia I), 204 F.3d 1 (1st Cir. 2000).

III), 351 F.3d 547, 577 (1st Cir. 2003) (rehearing and rehearing en banc denied Feb. 17, 2004).

These appeals arise more than two years after the plaintiffs' first attempt to collect the judgment, which remains unpaid. Two questions are presented: (1) whether the district court erred when it required the Town to include a sum sufficient to satisfy the judgment in its 2003-2004 budget, and (2) whether the court improperly required the reinstatement of the twenty plaintiffs as a contempt sanction for the Town's failure to comply with that order. We affirm the district court's decision to issue the budget-inclusion order but vacate and remand for recalculation of the amount. As to the contempt sanction, we affirm the finding of contempt but vacate the reinstatement order and remand for consideration of alternative sanctions.

## I.

The jury returned verdicts for the plaintiffs on November 23, 2001, and the district court entered judgment accordingly on December 3, 2001. On December 20, the court awarded the plaintiffs an additional $96,300 in attorneys' fees and costs. A few months later, in March 2002, the court denied the plaintiffs' motion for reinstatement. The defendants did not file a motion to stay the judgment under Fed. R. Civ. P. 62.

On April 29, 2002, the plaintiffs made their first effort to execute on the judgment. From Vera and Gonzalez in their

personal capacities, the plaintiffs sought immediate payment of the punitive damages awards; from the Town,[2] they sought an order requiring the remaining judgment sum and attorneys' fees and costs to be included in the municipality's 2002-2003 budget. The plaintiffs' motion relied on 21 P.R. Laws Ann. § 4303(c), which requires municipalities in Puerto Rico to include outstanding court judgments in their annual budgets, and on Fed. R. Civ. P. 69, which provides that federal judgments shall be executed in accordance with local law. The defendants opposed the motion, arguing that they should be entitled to a stay of execution pending appeal without posting a bond or providing other security because, in light of the Town's recurring budget cycle, there was no risk that the plaintiffs would be unable to collect.

On May 16, 2002, the district court granted the plaintiffs' motion. Citing § 4303(c), it ordered the Town to include in its budget for the 2002-2003 fiscal year the sum of $6,956,400, plus the $96,300 fees and costs award, plus appropriate post-judgment interest. In addition, the court required Vera and Gonzalez to pay the punitive damages award immediately, but it permitted them to stay execution pending appeal by posting a $600,000 supersedeas bond. The Town sought an emergency stay of execution from this court. We granted only a temporary ten-day

---

[2] For convenience, we refer to the municipality and the individual defendants in their official capacities collectively as the "Town."

stay to allow the Town to post an appropriate bond or present its arguments for a longer stay to the district court.[3] Acevedo-Garcia v. Vera-Monroig (Acevedo-Garcia III), 296 F.3d 13, 18 (1st Cir. 2002) (per curiam).

The defendants returned to the district court, which generously allowed the Town extra time to develop its arguments. The Town urged the court to grant it a stay of execution pending appeal without any requirement for a supersedeas bond or other judgment security. It represented:

> Due to the recurring nature of the Municipality's budget and its ability to obtain large scale financing from the Government Development Bank, it has the financial ability to pay the outstanding monetary judgment, shall the same be affirmed.

In response, the plaintiffs agreed to drop their objection to a stay of execution if the Town could provide proof that the Government Development Bank was prepared to loan the Town sufficient funds to cover the judgment.

On August 26, 2002, the district court accepted the defendants' argument, subject to the condition recommended by the plaintiffs. The court informed the Town that it would stay execution of the judgment if, by October 3, 2002, the Town could produce a certified letter of intent from the Government Development Bank guaranteeing Adjuntas a loan large enough to

---

[3] Vera and Gonzalez also sought a stay without the need to post a supersedeas bond. We upheld the bond requirement. Acevedo-Garcia II, 296 F.3d at 18.

-5-

satisfy the judgment in the event the judgment were affirmed by this court.[4] The court specified that the amount of the guaranteed loan had to be at least $6,356,400 (i.e., the full judgment amount minus the punitive damages awards). The court warned: "No extensions of time will be granted. Failure to abide by this order shall result in severe sanctions, including execution of judgment."

For whatever reason, the Town did not live up to its representations. The Government Development Bank turned down the Town's request for a loan, and the court was so informed on October 3, 2002. The Town offered no other security, though Vera and Gonzalez in their personal capacities complied with the court's order and posted a supersedeas bond to secure the punitive damages awards. One week later, plaintiffs petitioned for a writ of execution as to the Town. The Town did not respond, however, and the district court did not rule on the motion. And there matters sat.

Nearly four months later, on February 4, 2003, the plaintiffs renewed their motion with the district court. They asked the court to order the Town to include the judgment sum in its 2003-2004 budget, pointing out that although nearly nine months had passed since the court's first budget-inclusion order, Adjuntas had neither included the judgment in its 2002-2003 budget nor

---

[4] The court noted that the Government Development Bank had been willing to provide such a letter to another municipality in a similar political discrimination case.

obtained the promised loan guarantee from the Government Development Bank. Again, there was no response from the Town.

On February 13, 2003, the district court granted the plaintiffs' motion. The court ordered the Town to include in its budget for fiscal year 2003-2004 the entire amount of the judgment ($6,956,400), plus the fees and costs award ($96,300), plus post-judgment interest.

The Town did not appeal this order. Nor did it comply. Nor, indeed, did it inform the district court of its failure to comply. It was the plaintiffs who finally brought the Town's noncompliance to the court's attention in a July 3, 2003 motion. The plaintiffs appended to their motion a "certification" issued by the Town's Director of Finance stating that the Town had not assigned "any entry of expenditure" to satisfy the judgment. They asked that the court order Vera, as mayor, to show cause why he should not be held in contempt of court.

The Town filed an opposition to the show cause order on July 11. It said that Vera had tried to include the judgment in the Town's 2003-2004 budget but was precluded from doing so under Article 19.013 of the Puerto Rico Autonomous Municipalities Act, 21 P.R. Laws Ann. § 4912, pursuant to which (according the Town) the municipality would be "automatically fined" for submitting a grossly unbalanced budget. The judgment sum, the Town said, exceeded the Town's entire expected income for the fiscal year.

The Town attached a letter from Bárbara M. Sanfiorenzo Zaragoza, Esq., the Puerto Rico Commissioner of Municipal Affairs, who stated that a sum as large as the judgment in this case could not be budgeted within a single fiscal year. The Town offered no alternative security.

Understandably unhappy with the defendants' noncompliance, the district court entered an order on July 18, 2003 holding the Town in contempt. As a sanction, the court ordered the Town to reinstate, on a staggered basis before the end of 2003, the twenty plaintiffs whose dismissals had been the basis for the original political discrimination suit. Defendants immediately appealed, and this court issued an unpublished order staying the reinstatement sanction.

On August 13, 2003, the defendants filed a motion in the district court to vacate not only the reinstatement order, but also the May 2002 and February 2003 budget-inclusion orders. The motion purported to rely on Fed. R. Civ. P. 59(e), 60(b), 62(c), and 62(f). Included in this motion was a request by Vera and Gonzalez in their personal capacities to set aside the portion of the May 2002 budget-inclusion order requiring them to post a supersedeas bond. The district court denied the motion without opinion.

These are the defendants' consolidated appeals from (1) the grant of the reinstatement sanction order; and (2) the denial of the defendants' August 13, 2003 motion to set aside the sanction

and budget-inclusion orders. Vera and Gonzalez join the appeals in their personal capacities insofar as the district court denied their request to set aside the supersedeas bond requirement.

## II.

### A. Denial of Rule 62(f) Motion

We can dispense quickly with defendants' arguments under Fed. R. Civ. P. 62(f). The defendants devote much of their brief to the contention that the district court could not issue the budget-inclusion orders, and thus could not sanction the defendants for violating those orders, because the defendants were entitled to an automatic stay of execution under Rule 62(f). Under that rule, a judgment debtor is entitled to a stay of execution if, under state law, the judgment operates as a lien on the debtor's property and would have entitled the debtor to a stay if the action had been filed in state court. See Castillo v. Montelepre, Inc., 999 F.2d 931, 941-42 (5th Cir. 1993). For reasons that need not be elaborated here, defendants assert that Puerto Rico law entitled them to a stay until the judgment became "firm and unappealable."

This issue is now moot. If Puerto Rico law did entitle defendants to a stay (a question we do not decide), that entitlement ended when this court affirmed the judgment on direct

appeal. This court's mandate has now issued in <u>Acevedo-Garcia III</u>, and the time for seeking certiorari expired on May 17, 2004.[5]

We turn to the defendants' remaining arguments.

**B. Defendants' Attack on the Budget-Inclusion Orders**

The defendants argue that the district court abused its discretion by refusing to vacate its budget-inclusion orders for two reasons. First, emphasizing that Fed. R. Civ. P. 69(a) restricts the process for executing on a federal judgment to those procedures allowed under local law, they argue that the budget-inclusion orders in this case were illegal under various provisions of Puerto Rico law. Second, the defendants say that even if the district court had the power to issue a budget-inclusion order, the court wrongly required the Town to include in its budget certain amounts actually owed by Vera and Gonzalez personally.

1.   <u>Vehicle of Attack:   Defendants' Motion Under Rules 59(e) and 60(b)</u>

The first question is whether defendants are entitled to challenge the budget-inclusion orders at all, given the procedural posture of this case. Plaintiffs point out that this is not an appeal from the budget-inclusion orders themselves but from the denial of the defendants' August 13, 2003 motion under Rules 59(e)

---

[5] Nor does defendants' Rule 62(f) argument help them in their challenge to the district court's finding of contempt. Even if we assume, for argument's sake, that defendants were entitled to a stay under Rule 62(f), that fact has no bearing on the validity of the contempt order. <u>See</u> <u>infra</u> Part II.C.1.

and 60(b) to vacate those orders. Nothing in those rules, plaintiffs argue, permits the Town to dispute the merits of the February 2003 and May 2002 budget-inclusion orders so long after the fact.

As to Rule 59(e), the plaintiffs are plainly correct. The defendants' August 13 motion was not filed within 10 days of either budget-inclusion order. <u>See</u> Fed. R. Civ. P. 59(e) ("Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment."); <u>Garcia-Velazquez</u> v. <u>Frito Lay Snacks Caribbean</u>, 358 F.3d 6, 11 (1st Cir. 2004) (district court lacks the power to grant an untimely Rule 59(e) motion).

Whether the defendants' motion was proper under Rule 60(b) is a harder question.[6] The motion did not specify the paragraph of Rule 60(b) under which defendants sought relief, and defendants' appellate papers do not clarify the point. If the defendants meant that the district court's budget-inclusion orders were legal "mistake[s]" subject to correction under Rule 60(b)(1), their argument must fail. <u>See</u> <u>Silk</u> v. <u>Sandoval</u>, 435 F.2d 1266,

---

[6] We bypass the plaintiffs' argument that the Town cannot rely on Rule 60(b) because it could have appealed the budget-inclusion orders directly. <u>Cf.</u> <u>Parrilla-Lopez</u> v. <u>United States</u>, 841 F.2d 16, 20 (1st Cir. 1988) ("Rule 60(b) may not be used as a substitute for an appeal."). We are not certain that the budget-inclusion orders were in fact immediately appealable, either as final orders, 28 U.S.C. § 1291, or under the collateral-order doctrine, <u>see</u> <u>United States</u> v. <u>Billmyer</u>, 57 F.3d 31, 34-35 (1st Cir. 1995). In the end, it does not matter, as we do not rest our conclusion on the defendants' failure to appeal.

1267-68 (1st Cir. 1971) (a mistake of law is not a "mistake" within the meaning of Rule 60(b)(1)). Moreover, to the extent the defendants' motion challenged the May 2002 budget-inclusion order under Rule 60(b)(1), it was time-barred. See Fed. R. Civ. P. 60(b) (motions under Rule 60(b)(1) must be brought within one year of the challenged order or judgment); Claremont Flock Corp. v. Alm, 281 F.3d 297, 300 (1st Cir. 2002).

Nevertheless, Rule 60(b)(6) provides more flexible time parameters, and there may have been extenuating circumstances. Thus, we will bend over backwards, give the defendants the benefit of the doubt, and accept Rule 60(b) as a proper vehicle for attacking the budget-inclusion orders. We review the district court's denial of the motion for abuse of discretion. United States v. $23,000 in U.S. Currency, 356 F.3d 157, 165 (1st Cir. 2004).

2.    Validity of the Budget-Inclusion Orders Under Rule 69(a)

There is no merit to the defendants' argument that the budget-inclusion orders were not "in accordance with the practice and procedure of the state in which the district court is held" under Rule 69(a). In fact, the Puerto Rico Autonomous Municipalities Act mandates that money judgments against a municipality be included in the municipal budget for the next fiscal year:

-12-

> In the general budget draft resolution of each
> municipality, it shall be <u>mandatory</u> to include
> appropriations with sufficient credits for the following
> purposes, and in the order of priority provided below:
> (a)  Interest, amortizations and withdrawal from the
>      municipal public debt;
> (b)  other statutory expenditures and obligations;
> (c)  <u>payment of court judgments</u> . . . .

21 P.R. Laws Ann. § 4303 (emphasis added).  The same conclusion was

reached by the district court, which specifically cited § 4303(c)

in its May 2002 budget-inclusion order.

The Town acknowledges § 4303(c) but argues that the

statute should not be literally enforced where, as the Town says is

the case here,[7] the judgment in question is so large that complying

with § 4303(c) would make it impossible for the municipality to

balance its budget.  The Town says that other provisions of the

Autonomous Municipalities Act require it to maintain a balanced

budget, so it is not free to comply with § 4303(c) under the

circumstances.

We are not persuaded.  The Town relies on 21 P.R. Laws

Ann. § 4301, which provides in relevant part:

> The Mayor shall draft the <u>balanced</u> Budget Resolution Bill
> of income and expenditures of the municipality for each
> fiscal year, which he/she must present before the
> Municipal Assembly together with a budget message, no
> later than the 15th of May of each year . . . .

---

[7] According to the Town, the judgment in this case exceeds its
entire annual budget.  Papers filed by the Town in the district
court indicate that Adjuntas had revenues in 2002-2003 of slightly
over $6 million.

(emphasis added). For purposes of these appeals, we will accept the Town's representation that § 4301 requires the mayor to submit a balanced budget to the municipal assembly. But nothing in this or any other provision cited by the Town[8] suggests that the balanced-budget requirement excuses a municipality from complying with the "mandatory appropriation" rules in § 4303. On the contrary, § 4303 itself outlines some of the expenditures that the mayor must consider "[i]n order to estimate the resources to draft and balance the budget." Id. Under § 4303, the mayor has no discretion to decline to fund court judgments -- their inclusion in the budget is "mandatory." The defendants' suggestion to the district court that the Town would be "automatically fined" for including the judgment in its budget borders on willful misrepresentation.[9]

---

[8] The Town also cites 21 P.R. Laws Ann. § 4371, which declares a "public policy" that municipalities maintain a "fair and equal balance" between fiscal resources and economic obligations; § 4356, which limits unapproved emergency spending to 5% of the authorized budget in a given year; and § 4354(b), which bars municipalities from entering contracts requiring future payments in amounts exceeding appropriations. None of these provisions offers any reason to read an exception into the unambiguous terms of § 4303(c).

[9] The Town told the district court that it would be "automatically" fined under 21 P.R. Laws Ann. § 4912 for submitting a "grossly unbalanced budget." That statute does permit the Commissioner of Municipal Affairs to levy a fine against any municipality or municipal employee who "[v]iolates the provisions of law and the regulations governing the administration of the municipality's general operating budget." But § 4912 is discretionary, not mandatory. See id. ("The Commissioner may impose and collect an administrative fine . . . ." (emphasis

-14-

Statutory arguments aside, there is no necessary tension between the requirement that the mayor submit a balanced budget and the command in § 4303(c) that court judgments be promptly paid. After all, the Town was prepared to pay the entire judgment in October 2002 by securing a loan from the Government Development Bank -- a loan that, presumably, the Town would have repaid over a period of years consistent with its budgetary obligations under Puerto Rico law. Although that loan was turned down for reasons not in the record, the Town has made no effort to show that alternative forms of financing (bonds, private lenders, etc.) are unavailable. Cf. 21 P.R. Laws Ann. § 4051(h) (municipalities have the power to "[c]ontract loans . . . and incur debts in the form of borrowings, bond issues or notes"). In the plaintiffs' words, the Town's "responsibility is to fund payment of the judgment, and to do so by whatever financing means will accomplish appropriate objectives of the [Town], including balancing the budget."

The Town's remaining arguments based on Puerto Rico law are also unavailing. The Town says that the budget-inclusion orders are inconsistent with Puerto Rico law prohibiting the attachment or garnishment of public funds. But a court does not "attach" public funds by ordering that future budgets take account

---

added)). The maximum fine under § 4912 is only $5,000. Id. And it is far from clear that the Town would "violate[]" Puerto Rico law by including the judgment in its budget -- on the contrary, it seems more likely that the Town would violate Puerto Rico law by failing to do so. See § 4303(c).

-15-

of a court judgment, as the Puerto Rico Supreme Court has recognized. See Librotex, Inc. v. P.R. Aqueducts & Sewer Auth., 138 D.P.R. 938, 942-43 (P.R. 1995) (direct attachment of the funds of a public agency was impermissible, but an equitable order requiring the judgment to be included in the agency's next budget cycle was acceptable). The Town further argues that the budget-inclusion orders in this case were tantamount to a supersedeas bond requirement, and under Puerto Rico law, municipalities are exempt from such requirements. See P.R. R. Civ. P. 69.6(a). The analogy fails: Puerto Rico law not only permits but requires municipalities to include court judgments in their annual budgets. § 4303(c). Moreover, by defendants' logic, virtually any form of judgment security required of a municipality would be tantamount to a supersedeas bond and, thus, precluded by Puerto Rico law. We do not think that Puerto Rico law so insulates municipalities from their judgment creditors.

We hold that the district courts' budget-inclusion orders were consistent with Puerto Rico law and, accordingly, not in violation of Rule 69(a).[10]

---

[10] We likewise hold that the district court did not err in denying the individual defendants' request, as part of the defendants' August 13, 2003 motion, to be released from the supersedeas bond requirement. Vera and Gonzalez offered no basis for that request in the district court. To the extent the motion was predicated on Rule 62(f), the issue is now moot for the reasons explained above. If there was another basis for their objection to the bond requirement, Vera and Gonzalez have waived it by failing to argue the point on appeal. See Smilow v. S.W. Bell Mobile Sys.,

3.    <u>Amount of the Budget-Inclusion Order</u>

Defendants' second argument is that the district court abused its discretion in the <u>amount</u> that it ordered the Town to include in its budget.  The February 2003 budget-inclusion order required the Town to include the entire judgment ($6,956,400) in its 2003-2004 budget.  The Town says that, at a minimum, the court should have reduced this sum by $600,000, the amount of the punitive damages awards against the individual defendants in their personal capacities.  <u>Cf.</u> <u>City of Newport</u> v. <u>Fact Concerts, Inc.</u>, 453 U.S. 247, 271 (1981) (municipalities are immune from punitive damages in § 1983 suits).

Defendants appear to be correct.  We say "appear to be" because there are ambiguities in the record concerning the calculation and breakdown of the judgment.  The parties have not directly addressed this issue in their briefs.  We note that in the plaintiffs' first motion to execute on the judgment, they sought an order compelling the Town alone to pay $6,406,400 plus fees, costs and interest.  It is unclear how plaintiffs derived that number.  The district court, in its various orders, attributed to the Town a somewhat lower sum:  $6,356,400, which is the total judgment of $6,956,400 minus the $600,000 in punitive damages.  Not surprisingly, the defendants employ the district court's numbers in their appellate papers, but they too filed papers in the district

---

<u>Inc.</u>, 323 F.3d 32, 43 (1st Cir. 2003).

court using the $6,406,400 number. Neither party offers an explanation for the $50,000 difference. Perhaps it reflects an estimate of the interest owed -- we cannot tell.

To make matters more confusing, the defendants say that $1.5 million of the judgment attributed to the Town was actually an award of due-process damages against Gonzalez personally. But that is far from clear on the record before us. Certain language in the district court's judgment does suggest (though it does not explicitly state) that due process damages were assessed against Gonzalez in her personal capacity. Yet elsewhere the court treats the $1.5 million award against Gonzalez as a liability of the Town. This issue is plainly relevant to the budget-inclusion order, as it affects the amount of the Town's liability, and we are surprised that none of the parties has addressed it explicitly.[11]

Given the gaps in the record, we will remand to the district court to reconsider the proper amount of the budget-inclusion order. If the $6,956,400 sum in the February 2003 budget-inclusion order included the punitive damages awards, then defendants are correct and the sum should be reduced. Similarly, the Town is not liable for other damages awarded solely against the

---

[11] We are also surprised that counsel for Gonzalez in her personal capacity joined in the defendants' joint brief, if in fact (as that brief asserts) the Town's position is that Gonzalez is individually liable for the $1.5 million in due-process damages. The conflict of interest between the Town and Gonzalez on this issue is apparent.

-18-

individual defendants in their personal capacities, if any.   We note that the Town remains liable for the $96,300 in fees and costs awarded by the district court.  In addition, the Town is liable for post-judgment interest, and at least an initial portion of that award should be calculated and included in the next budget-inclusion order as a specific sum.   We are confident that the district court, with the assistance of the parties, will be able to work through these details on remand.[12]

**C.   The Contempt Finding and Reinstatement Sanction Order**

Defendants also appeal what they call the "Reinstatement Contempt Sanction Order."  It is not clear to us whether the defendants are attempting to appeal from the finding of contempt itself or, as they more clearly argue, from the district court's choice of reinstatement as a sanction.

      1.    <u>Contempt Finding</u>

To the extent defendants challenge the contempt finding itself, we reject their arguments.   Defendants contend, for example, that the district court had no jurisdiction to issue the

---

[12] This remand is not a license to defendants to attack the merits of the judgment.  Even before this court, defendants have asserted a series of arguments that are not defenses to execution but rather attacks on the amount of the damages awarded.  For example, the Town argues that Puerto Rico law provides a damages cap for municipalities and that this damages cap should apply in § 1983 actions in federal court.  It is far too late in the day for these arguments, which should have been raised during the merits phase of this case.  Defendants would be well-advised to refrain from reiterating them on remand.

reinstatement sanction order because the plaintiffs had earlier appealed the district court's March 8, 2002 denial of reinstatement, and that appeal was still pending before this court at the time. It is true that the filing of a notice of appeal divests the district court of jurisdiction over matters related to the appeal. United States v. Brooks, 145 F.3d 446, 456-57 (1st Cir. 1998); United States v. Distasio, 820 F.2d 20, 23 (1st Cir. 1987). But that principle has no bearing on a court's power to hold a party in contempt for violating a court order related to execution on a judgment. The federal rules contemplate that, absent a stay, a victorious plaintiff may execute on the judgment even while an appeal of that judgment is pending. See, e.g., Fed. R. Civ. P. 62. If a party violates an unstayed execution order, the fact that the underlying judgment is on appeal does not deprive the district court of its normal contempt powers.

Similarly, the contempt finding was valid even if defendants are correct that they should have received an automatic stay of the May 2002 budget-inclusion order under Rule 62(f).[13] Defendants argue that because (in their view) they were entitled to a Rule 62(f) stay, the budget-inclusion order should never have issued, so there was no basis for holding them in contempt. This argument fails. It is well-settled that a party is not free to

---

[13] Again, we take no view as to whether defendants were entitled to such a stay.

violate a court order simply because it believes (correctly or not) that the order is invalid. <u>Walker</u> v. <u>City of Birmingham</u>, 388 U.S. 307, 320-21 (1967); <u>In re Providence Journal Co.</u>, 820 F.2d 1342, 1346 (1st Cir. 1986).

We affirm the district court's finding of contempt.

2.     <u>Reinstatement Order</u>

The district court's choice of sanction, however, is a different matter.  The court required the Town to reinstate all twenty plaintiffs, not at the plaintiffs' request or as relief to which they were entitled on the merits, but solely as a sanction for the Town's failure to comply with the court's budget-inclusion order.  The court did so notwithstanding the fact that, in March 2002, the court itself had concluded that ordering reinstatement on the facts of this case would be "unreasonably burdensome" on the Town.

The plaintiffs do not now defend the reinstatement order; in fact, they have filed a motion in the district court to vacate the reinstatement order and impose alternative sanctions.  Because no party wishes the present reinstatement order to continue in effect, we vacate it.[14]  We do so to permit the district court to hear arguments on alternative sanctions.  Plaintiffs have reserved the right to seek entry of a new reinstatement order by the

_____

[14] The plaintiffs ask in their brief that we simply continue this court's earlier stay of the reinstatement order.  We deny that request.

district court, if need be, and the defendants have likewise reserved the right to object to any such order. We entrust the matter to the discretion of the district judge.

We add this. The defendants have now had nearly <u>thirty months</u> since the district court's December 2001 judgment to plan how to meet their obligations should the judgment be affirmed. They have not done so. On the contrary, they have engaged in what appears to be a deliberate strategy of obstruction and delay. The consequences of defendants' initial illegality and continuing irresponsibility should fall on them. If there are ramifications under Puerto Rico law for the defendants' failure to meet their obligations under federal law, so be it -- it is not the function of the federal courts to extricate defendants from a mess of their own making. Had defendants applied themselves with diligence to addressing the problem, rather than engaged in willful blindness, we doubt this matter would be before us for the fourth time.

### III.

The district court's denial of the defendants' August 13, 2003 motion is **<u>affirmed</u>**, but the amount of the budget-inclusion order is **<u>vacated</u>**. The matter is **<u>remanded</u>** to the district court for entry of a budget-inclusion order that (i) excludes any amounts solely owed by Vera or Gonzalez personally, (ii) includes the $96,300 fees and costs award, and (iii) includes an appropriate and specific sum as an initial award of post-judgment interest. The

district court's finding of contempt is **affirmed**, but the reinstatement sanction is **vacated** and the matter is remanded to the district court for consideration of alternative sanctions.

Costs of these appeals are awarded to plaintiffs.

**So ordered**.

# United States Court of Appeals
## For the First Circuit

———

Nos.   03-2103
      03-2292

LUIS A. ACEVEDO-GARCIA ET AL.,

Plaintiffs, Appellees,

v.

ROBERTO VERA-MONROIG, Individually and as Mayor of Adjuntas; MUNICIPALITY OF ADJUNTAS; IRMA M. GONZALEZ-DELGADO, Individually and as Personnel Director of Adjuntas,

Defendants, Appellants.

———

**JUDGMENT**
Entered:  May 19, 2004

     This cause came on to be heard on appeal from the United States District Court for the District of Puerto Rico, and was argued by counsel.

     Upon consideration whereof, it is now here ordered, adjudged and decreed as follows: The district court's denial of the defendants' August 13, 2003 motion is affirmed, but the amount of the budget-inclusion order is vacated.  The matter is remanded to the district court for entry of a budget-inclusion order that (i) excludes any amounts solely owed by Vera or Gonzalez personally, (ii) includes the $96,300 fees and costs award, and (iii) includes an appropriate and specific sum as an initial award of post-judgment interest. The district court's finding of contempt is affirmed, but the reinstatement sanction is vacated and the matter is remanded to the district court for consideration of alternative sanctions.

     Costs of these appeals are awarded to plaintiffs.

By The Court:

**MARK R. SYSKA**

———————————————
Mark R. Syska, Chief Deputy Clerk

[cc: Certified copies to Hon. Jaime Pieras and Ms. Frances de Moran, Clerk, United States District Court for Puerto Rico. Copies to Mr. Martinez-Luciano, Mr. Villares Sarmiento and Mr. Mahony.]