IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LUIS A. ACEVEDO GARCIA, ET ALS. | * |
| Plaintiffs | * |
| vs. | * Civil No.: 97-2639(JP) |
| HON. ROBERTO VERA-MONROIG, ET ALS. | * |
| Defendants | * |

**************************************************

## MOTION FOR EXECUTION OF JUDGMENT

**TO THE HONORABLE COURT:**

**COMES NOW** plaintiffs, through the undersigned attorney, who very respectfully states and prays as follows:

A final judgment was entered in the above entitled case on November 14, 2006 (dkt. 489). This judgment was entered pursuant to a settlement agreed (dkt. 490) by the attorneys of all the parties involved and with the express consent of the Mayor of Adjuntas, Honorable Jaime Barlucea, who also signed the Agreement.

In said judgment the defendants agreed to pay the 62 plaintiffs with pending claims the amount of $12.5 million dollars. Payment that was to be made withing 120 days from the entry of judgment, that is they had until March 15, 2007 to comply with the judgment. On March 15, defendant's counsel, Evelyn Quiñones Carasquillo, informed us that she met with the Mayor and he informed her that during the month of April they were going to make

a payment of $615,000.00 and that further efforts were being made to obtain the total amount. A letter informing the "efforts" was sent to the subscriber the day before. It is proper that we make a recount of all the efforts that plaintiffs have made to vindicate their rights.

Plaintiffs were dismissed on September 11, 1997, 9 ½ years ago. The reason for plaintiffs dismissal was political discrimination. Plaintiffs filed before this Honorable Court the above entitled claim. During the course of these claims defendants sought summary judgment claiming absolute immunity, this court denied defendant's motion for summary judgment and this was appealed before the First Circuit Court. The Court of Appeals rendered their first Opinion and Order in this case on February 17, 2000. The Court of Appeals said then:

> **"After the enactment of Ordinance 20, defendants' implementation of the layoff plan targeted specific individuals. Following the terminations, the defendants hired contract employees for the same job function but under a different formal title. The replacement of NPP workers with less senior PDP contract workers performing essentially the same functions constituted particularized employment decisions rather than general policymaking. The defendants also targeted specific individuals in the NPP and "affected them differently from others" through restrictions on job amenities, such as bathroom access and office furniture, and reduction of job duties. According to the allegations, the political harassment began prior to the enactment of Ordinance 25 and persisted for the remaining NPP workers after the layoff of their co-workers pursuant to Ordinance 20. Because the defendants' stemmed from specific facts about the party affiliation of individuals and affected particular individuals differently form others, these actions were administrative rather than legislative. Legislative ratification does not shield the defendants from liability."**

After the judgment entered by the First Circuit Court we made several efforts to pursued defendants to settle this claim and defendants in an obstinate attitude refused and choose to go to trial. The trail of the first 20 plaintiffs began on October 12, 2001 and lasted 23 working days at the conclusion of the proceeding the Jury returned a verdict awarding each plaintiff a package of compensatory and punitive damages totaling $6,956,400.00 Defendants filed an appeal after this first trial, challenging the sufficiency of the evidence at trail, the severance of plaintiffs into four groups, the district court's denial of qualified immunity, numerous evidentiary rulings, the court's active participation at trial, the damage award, and the court's application of non-mutual offensive collateral estoppel.

It is proper to point out that when this court ordered the severance into four groups, defendants actively participated in this process and one of the purpose of this order was to facilitate to the parties the settlement of the remaining claims. The court ordered plaintiffs to select 10 claims (four plaintiffs with harassment claims and six plaintiff without harassment claim) and it ordered defendants to do the same. After agreeing to this procedure they challenged the same. The First Circuit Court affirmed the verdict entered by the Jury and the judgement entered by the court on August 21, 2003. The First Circuit Court said then:

> **"The unique circumstances of this case presented the district court with a number of complex questions in areas that have previously received little attention in this Circuit. The court correctly resolved most of these issues in comprehensive written decisions that greatly aided our review on appeal. The court also acquitted itself admirably in managing this difficult litigation. The errors we have cited in no way detract from our admiration for and appreciation of the Court's work."**

Another appeal was filed before the First Circuit Court when this Court on May 16,

2002 granted our motion requesting that the payment of the judgment be included in the City of Adjuntas's budget. On May 19, 2004 the First Circuit Court entered its judgment. The First Circuit Court, Circuit Judge Linch, began by stating defendant's deliberate intentions to obstruct and delay the payments.

> **"In these appeals, we address the willful and longstanding efforts of a Puerto Rico municipality, its mayor, and its personnel director to obstruct and delay the payment of a $6.9 million jury award in a civil rights case. This is the fourth time this case has come before this court.[1]**

Defendant's fourth appeal raised before the First Circuit Court that they were entitled to an automatic stay of execution under Rule 62 (f). That claim became moot because the time for a Certiorari under the judgment in Acevedo Garcia v. Vera-Monroig III had expired making the judgment firm, final and unappealable.

Defendants then raised the issue of this Court's budget inclusion order. As to this issue the First Circuit Court said:

> **"There is no merit to the defendants' argument that the budget-inclusion orders were not "in accordance with the practice and procedure of the state in which the district court is held" under Rule 69(a). In fact, the Puerto Rico Autonomous Municipalities act mandates that money judgments against a municipality be included in the municipal budget for the next fiscal year:**
>
> **In the general budget draft resolution of each municipality, it shall be mandatory to include appropriations with**

---

[1] See Acevedo-Garcia v. Vera-Monroig (Acevedo-Garcia III), 351 F. 3d (1st Cir. 2003); Acevedo-Garcia v. Vera-Monroig (Acevedo-Garcia II), 296 F.3d 13 (1st Cir. 2–2) (per curiam); Acevedo-Garcia v. Vera-Monroig (Acevedo-Garcia I), 204 F. 3d (1st Cir. 2000).

>   sufficient credits for the following purposes, and in the order of priority provided below:
>
>   (a) Interest, amortizations and withdrawal from the municipal public debt;
>
>   (b) Other statutory expenditures and obligations;
>
>   (c) <u>payment of court judgments</u> . . .

21 P.R. Laws Ann § 4303 (emphasis added). The same conclusion was reached by the district court, which specifically cited § 4303 (c) in its May 2002 budget-inclusion order.

The Town acknowledges § 4303 (c) but argues that the statute should not be literally enforced where, as the Town says is the case here, the judgment in question is so large that complying with § 4303(c) would make it impossible for the municipality to balance its budget. The Town says that other provisions of the Autonomous Municipalities Act require it to maintain a balanced budget, so it is not free to comply with § 4303 (c) under the circumstances.

We are not persuaded. The Town relies on 21 P.R. Laws Ann. § 4301, which provides in relevant part:

>   The Mayor shall draft the balanced Budget Resolution bill of income and expenditures of the municipality for each fiscal year, which he/she must present before the municipal Assembly together with a budget message, no later than the 15th of May of each year...
>
>   For purposes of these appeals, we will accept the Town's representation that § 4301 requires the mayor to submit a balanced budget to the municipal assembly. But nothing in this or any other provision cited by the Town suggests that the balanced-budget requirement excuses a municipality from complying with the "mandatory appropriation" rules in § 4303. On the contrary, § 4303 itself outlines some of the expenditures that the mayor must consider "[i]n order to estimate the resources to draft and balance the budget." <u>Id</u>. Under § 4303, the

mayor has no discretion to decline to fund court judgments - - their inclusion in the budget is "mandatory." The defendants' suggestion to the district court that he Town would be "automatically fined" for including the judgment in its budget borders on willful misrepresentation.

Statutory arguments aside, there is no necessary tension between the requirement that the mayor submit a balanced budget and the command in § 4303 that court judgments be promptly paid. After all, the Town was prepared to pay the entire judgment in October 2002 by securing a loan form the Government Development Bank - - a loan that, presumably, the Town would have repaid over a period of years consistent with its budgetary obligations under Puerto Rico law. Although that loan was turned down for reasons not in the record, the Town has made no effort to show that alternative forms of financing (bonds, private lenders, ets.) are unavailable. Cf. 21 P.R. Laws Ann. § 051 (h) (municipalities have the power to "[c]ontract loans . . . and incur debts in the form of borrowings, bond issues or notes"). In the plaintiffs' words, the Town's "responsibility is to fund payment of the judgment, and to do so by whatever financing means will accomplish appropriate objectives of the [Town], including balancing the budget."

The Town's remaining arguments base on Puerto Rico law are also unavailing. The Town says that the budget-inclusion orders are inconsistent with Puerto Rico law prohibiting the attachment or garnishment of public funds. But a court does not "attach" public funds by ordering that future budgets take account of court judgment, as the Puerto Rico Supreme Court has recognized. See Librotex, Inc. v. P.R. Aqueducts & Sewer Auth., 138 D.P.R. 938, 942-43 9p.r. 1995) (direct attachment of the funds of a public agency was impermissible, but an equitable order requiring the judgment to be included in the agency's next budget cycle was acceptable). The Town further argues that the budget-inclusion orders in this case were tantamount to a supersedeas bond requirement, and under Puerto Rico law, municipalities are exempt from such requirements. See P.R. R. Civ. P. 69.6(a). The analogy fails: Puerto Rico law not only permits but requires municipalities to include court judgment in their annual budgets. § 4303 (c). Moreover, by defendants' logic, virtually any form of judgment security required of a municipality would be tantamount to a supersedeas bond and, thus, precluded by Puerto Rico law. We do not think that Puerto Rico law so insulates municipalities from their

**judgment creditors.**

**We hold that the district courts' budget-inclusion orders were consistent with Puerto Rico law and, accordingly, not in violation of Rule 69(a)."**

The third issue raised before the First Circuit Court was this courts's finding that defendants were in contempt. The First Circuit affirmed the District Court's findings of contempt although it vacated the reinstatement order.

The First Circuit Court ended its judgment by stating:

**"We add this. The defendants have now had nearly thirty months since the District Court's December 2001 judgment to plan how to meet their obligations should the judgment be affirmed. They have not done so. On the contrary, they have engaged in what appears to be a deliberate strategy of obstruction and delay. The consequences of defendants' initial illegality and continuing irresponsibility should fall on them. If there are ramifications under Puerto Rico law for the defendants' failure to meet their obligations under federal law, so be it -- it is not the function of the federal courts to extricate defendants from a mess of their own making. Had defendants applied themselves with diligence to addressing the problem, rather than engaged in willful blindness, we doubt this matter would be before us for the fourth time."**

Before addressing the issue of the non-compliance of the final judgment entered on November 14, 2006 we would like to inform the Court that the judgment for the First group of 20 plaintiffs added up to $7,462,889.00. Defendants made a first payment of $3,500,000 and a second payment of $3,952,292.47, this is $10,596.53 were due and we have been trying since then to collect this amount directly from defendants without occupying this Court, but all our efforts have received no positive response from defendants.

Our efforts to settle this claim in order to avoid a lengthy litigation, that considering

that three groups of twenty, twenty and twenty-two plaintiffs have not had their day in court, will have easily occupies various months of this court's time, were at least arduous and tortuous. Finally we were able to arrange a meeting at the mayor's office. At this meeting were present sister counsel Evelyn Quiñones-Carasquillo, the mayor's financial adviser, Mr. Hans Mercado, the Mayor and the subscriber, as counsel for plaintiffs.

Because the First group of plaintiffs obtained a final payment of around $7,000,000.00. This is $350,000. per plaintiff and because in selecting the first 20 plaintiffs defendants choose ten that they believed had no opportunity in prevailing and because one of the purpose in applying the severance order was to give the parties a reasonable idea of what the outcome of the remaining claims could be, it was reasonable then to estimate that each of the remaining 62 plaintiffs could get an average of a similar amount which would probably add to a judgment of $27,700,000.00. At this meeting we asked for 15 million in settlement. Defendants then presented to us that they had already allocated and were able to pay the amount of $11,000,000.00. When we asked how long it would take them to produce the 11 million, they told us that approximately 60 days. We then made an offer of $12.5 million and the mayor told us to give him one hour to discuss with his advisors if he could produce the additional $1 ½ million that we were requesting. We met an hour later and the mayor in the presence of his advisors, attorneys Quiñones and Mercado accepted our settlement offer.

Immediately after our meeting with the mayor we had a meeting with all the plaintiffs in Adjuntas, where we informed them of the result of our negotiations and we scheduled a second meeting in our office in Aguadilla where we met individually with the 62 remaining

plaintiffs in order to explain in detail the settlement that was reached and to obtain their written consent to this settlement. Because the immense majority of these plaintiffs have been without work since September 11, 1997, they agreed to the settlement because of defendants presentation that the payment would be available within 60 days. Afterward we informed the court that a settlement had been reached and a settlement conference was scheduled for November 14, 2006.

At the settlement conference we asked the mayor if he believed that he could comply with the payment of the judgment within the 60 days that he had presented to us, he answered in the affirmative but stated that it would be better if he could be granted 90 days. We told him that we were willing to grant 120 days for the payment of judgment and this was agreed by all the parties. To this effect the final judgment (dkt. 489) states as follows:

**"This sum must be paid within one hundred and twenty days form entry of this judgment. The parties consent to the Court retaining jurisdiction to enforce this judgment."**

After this meeting we sent a letter to all the plaintiffs informing them that a final judgment had been entered and that the only difference between what I had previously informed them and they had authorize me to accept was that instead of 60 days the judgment would be paid in 120 days. They all agreed with my decision.

It is extremely frustrating that on the last day that defendants, at there own request, had to pay the Judgment they now inform that next month they will make a payment of $615,000.00 this is $11,885,000.00 less of what we all agreed was to be paid. Unfortunately we have to conclude that the defendants, are obstructing and delaying in a

willful and longstanding effort the payment of the judgment in this case.As the First Circuit said in its May 19, 2004 Judgment the District Court's finding of contempt was affirmed and the matter of sanctions is remanded to the District Court for considerations of alternative sanctions. This final judgment by agreement of all the parties is firm, final and unappealable from the day it was entered and the parties consented to the court retaining jurisdiction to enforce this judgment.

Pursuant to Rule 69 of the Federal Rules of Civil Procedure we respectfully request from this District Court:

1. That defendants be ordered to deposit within 10 days the amount of $10,596.53 that they owe from the first judgment

2. That they deposit within 10 days the amount of $615,000.00, that they stated that they have and are planning on depositing next month.

3. That a 10% of post-judgment interest be applied to the final judgment since the day the judgment was entered, November 14, 2006.

4. That defendants be ordered to pay the remaining balance of the final judgment within 60 days, this is on or before May 14, 2007.

5. In accordance with the ordered entered by this Court on September 22, 2004 (dkt. 381) defendants be warned that any tardiness in the deposit fo the funds on the dates they are ordered shall result in a fine of $3,000.00 for each day they are late.

**WHEREFORE,** we respectfully requested that this Motion BE GRANTED.

**I hereby certify** that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the

following: Attorneys; Harry R. Segarra, Esq., and Evelyn Quinones, Esq., Santa Maria Mall, 471 Ferrocarril Ave.-Suite207, Ponce, PR 00731, eqclaw@centennialpr.net.

**RESPECTFULLY SUBMITTED.**

In Aguadilla, Puerto Rico, this 19th day of March, 2007.

*s/ Israel Roldán González*
**ISRAEL ROLDAN GONZALEZ**
**USDC-P.R. 115602**
**Attorney for Plaintiffs**
**44 Progreso Street**
**Aguadilla, Puerto Rico 00603**
**Tel. (787) 891-1359 Fax.(787) 891-5000**
roldangonzalezpr@yahoo.com